[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action has been brought by the plaintiff, The International Association of Firefighters, Local 834 (hereinafter "Union") against the defendant the City of Bridgeport (hereinafter "City"), seeking an injunction enjoining the City from disbanding Bridgeport Fire Department's Truck Company No. 3.*
After reviewing the facts and relevant legal principles, the court has concluded that it should not issue an injunction.
The facts which led to this dispute may be summarized as follows: Mayor Joseph P. Ganim sent a memorandum to Fire Chief Gerald Grover, dated February 28, 1995, referencing an excessive CT Page 5260 binding arbitration award and the actions taken by the Financial Review Board, requesting that the Chief analyze and "implement a reorganization plan that will assist the City in saving substantial dollars". A January 11, 1995 memorandum from Chief Grover to Mayor Ganim addressed a recommendation to reduce the fire department budget by 1.5 million dollars. The Union is the bargaining agent for all of the fire department personnel, with the exception of the Fire Chief. The Union and the City are parties to an Agreement entered into as of the first day of July, 1988. The cover sheet of the Agreement states July 1, 1988 to June 30, 1992. The Agreement was entered as an exhibit and the court concludes that it remains in effect. Connecticut General Statutes § 7-475 provides for an expired agreement to remain in effect until a new agreement has been approved by the municipal employer and the employee organization.
The plaintiff in its complaint references Connecticut General Statutes § 7-470 (a) and 7-470 (c) imposing a requirement that the City bargain collectively and in good faith with the plaintiff.
The plaintiff claims that the City violated Article 8, Section 1(d) of the Agreement, which reads as follows:
 (d) "Nothing herein shall [be] construed so as to prevent the City from changing the number of companies after consultation with the Union. In the event that any new company is established or an existing company is combined with another company, the minimum manpower standard as above will control" (emphasis added).
A previous Supplemental Agreement And Contract Amendment in effect until June 30, 1992 contained a paragraph (h) identical to (d) above, except that the word "negotiation" replaced the word "consultation."
The contract in effect on March 15, 1995, the date the City closed Truck Company No. 3, called for consultation not negotiation with the Union.
Any firefighters or officers connected with Truck Company No. 3 were reassigned. The City did not discharge or lay off any personnel. CT Page 5261
On March 3, 1995 Chief Grover wrote to Mayor Ganim outlining his recommendations, inter alia, to close Truck Company No. 3.
On March 10, 1995, Mayor Gamin wrote to Deputy Chief Craig Calvert (then Acting Chief in the absence of Chief Grover) requesting that firefighters presently assigned to Ladder 3 be relocated to other firehouses throughout the City. Deputy Chief Calvert was able to implement the schedule to permit the closing of Truck Company No. 3 on March 15, 1995.
The Union Vice President testified that he first learned of the closing on Monday evening, March 13, 1995. He then telephoned the Union President.
On March 14, 1995 the Vice president of the Union went to the Mayor's office and in the presence of other City officials was informed by the Mayor that Truck Company No. 3 was to be closed.
There was evidence that the Vice President of the Union protested the closing of Truck Company No. 3.
The Union will have the opportunity to argue its case before the State Board of Mediation and Arbitration. The Union will claim that the City violated Article 8, Section 1(d) of the Agreement. The City will claim that it did not have to negotiate with the Union. The State Board will decide if the City did, in fact, "consult" as required under the Agreement. The defendant has not committed an unlawful act. The Union's claim of a breach of contract would not justify an injunction.
The Union is now asking this court to order the parties to restaff and reopen Ladder Company No. 3 and operate said company in the same manner and with the same staffing that existed prior to the closing on March 15, 1995.
The Union maintains the Connecticut General Statutes § 31-115
is not applicable to public sector labor disputes. It cites various state and federal court decisions from Maine, Massachusetts and Rhode Island.
Connecticut General Statute § 33-115 has clearly been applied by our courts to labor disputes concerning public sector employees.International Association of Firefighters v. Stratford, CV92-02958117 CONN. L. RPTR. 111 (July 17, 1992) (Thim, J.); International Assn.of Firefighters, Local 786, et al v. Serrani, et al,
CT Page 526226 Conn. App. 610 (1992).
This court feels that it can sustain its finding under traditional standards. The Union must prove irreparable harm and lack of an adequate remedy at law.
The Union and the City each produced two expert witnesses. Each had excellent credentials and attained national leadership roles in firefighting positions.
The Union's local witnesses demonstrated a great depth of knowledge and dedication to their profession.
Each and every firefighter, including Chief Grover, testified that he did not sanction the closing of Ladder Company No. 3. Dedication to firefighting, safety of the firefighters and protection of people and property was clearly evident to the court. All of the witnesses were in total agreement that in a perfect world every fire department would have more personnel and more of the most "state of the art" equipment.
This court finds that the Mayor of the City of Bridgeport concluded that a financial situation dictated a reduction in the budget of the Bridgeport Fire Department. He instructed the Fire Chief to develop a plan to achieve that objective.
This court was much impressed by the knowledge and candor of Fire Chief Gerald Grover. He testified that he would take every dollar he could get from the City budget to improve the Bridgeport Fire Department to ensure the safety of its firefighters and the public.
He also testified and demonstrated to this court, that after a careful and professional study, he determined that the closing of Ladder Company No. 3 would not pose a risk to the health and safety of Bridgeport firefighters.
The Union put forth an abundance of evidence that "response time" was important to firefighter safety. It also produced much evidence to show that it was important for fire safety to have fire equipment, engine, truck and rescue trucks arrive at the scene of a fire almost simultaneously.
The court heard evidence of the methods of fighting fires and the development of personnel. The Union produced evidence to show CT Page 5263 that firefighters on engine companies have different on-the-scene job responsibilities as compared with firefighters assigned to ladder companies or rescue companies.
The Union and the City placed into evidence a great number of incident reports showing the response time of equipment in the various sections of the City of Bridgeport. Although it is obvious that response time will not improve with the closing of Ladder Company No. 3, this court was impressed by the over all response time of the Bridgeport Fire Department.
The court further finds that Ladder Company No. 3 was located almost in the middle of ladder Companies 5 and 11. The court also found that Chief Grover has introduced training programs and new equipment to assure the safety of his firefighters. The firefighters are crossed-trained and the personnel on the first responding truck, engine or ladder, can begin the fire fighting process while awaiting further assistance. In a perfect world all equipment and personnel would arrive at the scene simultaneously.
This court does not recall any evidence that slower response time endangered those firefighters initially at the scene. The experts and the chief explained the incident command system which permits the officer initially on the scene to introduce tactics and deploy the firefighters with saving of lives and firefighter safety as top priorities.
The courts have said that injunctive relief is not warranted by unsubstantiated generalized fears and concerns of the risk which befall a firefighter and such fears and concerns are not sufficient to establish a substantial probability that the alleged harm will occur, International Association of Firefighters v. Serrani, id.
Chief Grover also testified that he places great emphasis on firefighter safety and he has appointed a fire safety officer to report on all injury incidents. The only safety report introduced at trial was February, 1995 reporting on an incident on January 19, 1995. The court assumes that this report is the most recent and would indicate that the Fire Department, after the closing of Truck Company No. 3, continues to have a good safety record.
The court found no credible evidence that the City's action has had an adverse impact on the Union's reputation or effectiveness.
This court finds that the Union has failed to establish the CT Page 5264 traditional requirements for injunctive relief. The Union has failed to show a substantial probability of irreparable harm. Accordingly, Local 834's application for an injunction is denied.
RICHARD J. TOBIN, JUDGE